UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY DAVIS, TANEKA McNEIL; MARQUIETA R. McNEIL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NATIONAL CITY, et al.,<br><br>Defendants. | Case No.: 19-cv-00534-AJB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS, (Doc. No. 16)**<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT, (Doc. No. 28)** |

Presently pending before the Court is San Diego Sheriff's Deputy Davis Benner, Deputy Jose De La Torre, Deputy Shiloh Frantz, Deputy Stephen Krieg, Deputy Gregory Kurtz, Deputy Darius Palmer, Deputy Ryan Seabron, and Deputy Nicholas Sisto's (collectively, "County Defendants") motion to dismiss the Complaint, (Doc. No. 1). (Doc. No. 16.) Plaintiffs Tammy Davis, Taneka McNeil, and Marquieta R. McNeil (collectively, "Plaintiffs") filed an opposition to the motion. (Doc. No. 28.) County Defendants replied. (Doc. No. 30.) For the reasons set forth below, the Court **GRANTS** County Defendants' motion to dismiss **IN PART**, and **GRANTS** Plaintiffs' motion for leave to amend the Complaint.

## I. BACKGROUND

The following facts are taken from the Complaint and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013). This case arises out of events leading to the death of Earl McNeil ("Decedent"). On May 26, 2018, at 5:28 a.m., Decedent contacted National City Police Department ("NCPD") dispatch using an emergency telephone near the front door of the police department. (Complaint ("Compl."), Doc. No. 1 ¶ 2.) Decedent asked for someone to come out front and said he wanted to turn himself in on a warrant. (*Id.*) He additionally stated he was harboring homicidal ideations and was high on drugs. (*Id.*) Two NCPD officers were the first to contact Decedent at the front of the station at 05:32 a.m. (*Id.*) The first officer detained Decedent and placed him in handcuffs. (*Id.*) Decedent then became agitated and began yelling and pulling away. When NCPD officers began a pat down search of Decedent for weapons, Decedent lunged toward a railing. (*Id.*) He was taken to the ground by NCPD officers. (*Id.*)

Decedent was searched and the officers found methamphetamine and a weapon on Decedent's person. (*Id.* ¶ 3.) NCPD officers affixed Decedent to a WRAP device—a restraint system that constrains the detainee in a seated upright position, with the feet stretched out straight in front and hands handcuffed behind the back. (*Id.*) The NCPD officers also placed a surgical mask with medical-grade fabric over Decedent's face and a mesh protective sock over his head ("spit sock"). (*Id.* ¶ 4.) While constrained, Decedent stated he could not breathe. (*Id.*) Four NCPD officers carried Decedent to a patrol SUV and placed him in the back. (*Id.* ¶ 5.) Fifteen minutes elapsed from the officers' first contact with Decedent, until he was secured in the back of the police SUV at 05:47 a.m. (*Id.*) Decedent was then driven to a holding facility in the National City Police Station and remained in the vehicle for approximately one hour and fourteen minutes, while an officer completed paperwork. (*Id.* ¶ 6.)

Two NCPD officers then drove Decedent at 7:05 a.m. to the San Diego Central Jail ("SDCJ"). (*Id.* ¶ 6.) Upon arrival, NCPD officers and jail deputies placed Decedent on a

gurney and placed a second spit sock over the first spit sock. (*Id.* ¶ 8.) The deputies released the chest to ankle strap of the WRAP so Decedent could lie flat on his stomach on the gurney while the jail nurse began to examine him at 7:18 a.m. (*Id.*) The jail nurse noted signs of potential excited delirium, an elevated temperature of 100°F, and a rapid pulse of 120 beats per minute. (*Id.*) The jail nurse declined to admit Decedent to jail and instead referred him for a medical evaluation and a psychiatric evaluation at 7:26 a.m. (*Id.*) The call for paramedics was made by NCPD dispatch. (*Id.*) Decedent continued to spit through the two spit socks, which had become saturated with bodily fluids. (*Id.*) One of the deputies pulled the collar of Decedent's t-shirt up and held it up in front of Decedent's face to shield the deputies from further contact. (*Id.*) Decedent was taken inside the ambulance at 7:37 a.m. (*Id.* ¶ 9.) Upon arrival to the Emergency Department, Decedent was in pulseless electrical activity and was intubated. (*Id.*) His condition continued to decline until his death 16 days later on June 11, 2018. (*Id.*)

On March 20, 2019, Plaintiffs filed a survival and wrongful death suit against National City, various National City police officers, and the County Defendants. (Doc. No. 1.) Plaintiffs allege the following claims for relief against the County Defendants: (1) 28 U.S.C. § 1983 ("§ 1983") unreasonable search and excessive force; (2) § 1983 failure to provide medical care; (3) substantive due process; (4) § 1983 failure to supervise, train and take corrective measures; and (6) California Bane Civil Rights Act ("Bane Act"), California Civil Code § 52.1. County Defendants filed a motion to dismiss. (Doc. No. 16.) Plaintiffs opposed. (Doc. No. 28.) This order follows.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare*

3

*Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . .." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). County Defendants argue Plaintiffs' Complaint fails to state a claim upon which relief may be granted. (Doc. No. 16.) Thus, the Court considers the allegations in the Complaint and draws all reasonable inferences in favor of Plaintiffs.

### B. Motion for Leave to Amend the Complaint

Rule 15(a) governs leave to amend prior to trial. A party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one requiring a response, within 21 days after service of the responsive pleading or motion. *See* Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or with the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of leave to amend is in the Court's discretion. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy in favor of granting leave to amend is applied with extreme liberality. *See Foman v. David*, 371 U.S.

178, 181–82 (1962).

## III. DISCUSSION

After County Defendants' motion to dismiss was filed, Plaintiffs filed an opposition, wherein Plaintiffs asks the Court for leave to amend the Complaint. (Doc. No. 28.) County Defendants' reply in support of the motion to dismiss, (Doc. No. 30), does not raise objections to Plaintiffs' request for leave to amend the Complaint. After review of the parties' arguments, and with consideration for judicial economy, the Court finds it appropriate to address County Defendants' motion to dismiss. Thus, the Court will first begin with the motion to dismiss and will then turn to Plaintiffs' request for leave to amend.

### A. Motion to Dismiss

#### 1. Standing

To start, County Defendants argue Plaintiffs Tammy Davis (Decedent's aunt), Taneka McNeil (Decedent's alleged putative spouse), and Marquieta R. McNeil (Decedent's surviving spouse) all lack standing to bring their § 1983 claims for excessive force, for failure to provide medical care, for failure to supervise and train, and their claim for violation of the Bane Act. (Doc. No. 16-1 at 10.) Specifically, County Defendants argue that Plaintiffs cannot maintain an action for the alleged violation of constitutional rights belonging to another person. (*Id.* at 11.) The Court will first address standing as to the § 1983 claims, and will then turn to the claim under the Bane Act.

##### a) Plaintiffs' Standing to Assert § 1983 Claims

Generally, the federally protected rights that are enforceable under § 1983 are personal to the injured party. *See Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993) (internal quotations omitted). However, when a civil rights claim under § 1983 accrues before death, it may survive the decedent if state law authorizes a survival action. *See* 42 U.S.C. § 1988; *see also Robertson v. Wegman*, 436 U.S. 584, 588–90 (1978). In California, "a cause of action for or against a person is not lost by reason of the person's death." Cal. Civ. Proc. § 377.20. A survival action may be brought by the decedent's

5

personal representative or successor in interest. *See* Cal. Civ. Proc. § 377.30. "Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law." *Tatum v. City and County of S.F.*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006). A "successor in interest" is defined as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Code Civ. P. § 377.11; *Lickter v. Lickter*, 189 Cal. App. 4th 712, 722 (2010); *see Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1052 (9th Cir. 2018). To establish a successor in interest relationship, a plaintiff must submit an affidavit or declaration attesting to the fact that he or she is the decedent's successor in interest and attach the decedent's death certificate. *See* Cal. Civ. Proc. § 377.32 (stating requirements of a successor in interest declaration). A plaintiff bears the burden of demonstrating that they meet the state's requirements for bringing a survival action. *See Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998), *overruled on other grounds by Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 (9th Cir. 2019).

In addition, California's wrongful death statute similarly defines persons with standing to bring a claim:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
>
> (a) **The decedent's surviving spouse**, domestic partner, children, and issue of deceased children, or . . . the persons . . . who would be entitled to the property of the decedent by intestate succession.
> (b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, **the putative spouse**, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

Cal. Civ. Proc. Code § 377.60 (emphasis added).

Here, Plaintiffs establish that Decedent died intestate, and has no "personal representative." Therefore, only a "successor in interest" may pursue the survival claims in this case. *See* Cal. Code Civ. P. § 377.30. A "successor in interest" is "the beneficiary of the decedent's estate . . . ." *Id.* at § 377.11. A "beneficiary of the decedent's estate," in turn, is one who inherits under a will, or if there is no will, one who would inherit under California Probate Code §§ 6401 and 6402. *Id.* at § 377.10. Those statutes provide for inheritance by a married person as follows: (1) the surviving spouse; and (2) the child of the decedent. *See* Cal. Probate Code §§ 6401(a), 6402(a).

### (1) Taneka McNeil and Marquieta McNeil's Standing

The Court will first address whether Plaintiffs Marquieta McNeil and Taneka McNeil have established the necessary standing to maintain this action. County Defendants argue that either Marquieta McNeil or Taneka McNeil may bring a claim, but not both plaintiffs. (Doc. No. 30 at 4.) County Defendants also contend that to allow both spouses to proceed with these claims would pervert the California statutory scheme which outlaws bigamy, California Penal Code § 281. (*Id.* at 5.)

First, as to Marquieta McNeil, Plaintiffs offer Marquieta McNeil's declaration, wherein she declares she is the surviving legal spouse of Decedent. (Declaration of Marquieta McNeil, Doc. No. 28-2 ¶ 2.) She further provides that Decedent died intestate and did not leave any children. (*Id.* ¶ 4.) Marquieta McNeil also attaches Decedent's death certificate as well as the marriage certificate between Decedent and Marquieta McNeil. (*Id.*) Upon a close review of Marquieta McNeil's declaration, the Court finds that Marquieta McNeil has satisfied the requirements under Cal. Civ. Proc. § 377.32 to establish she is a successor in interest. Because Marquieta McNeil has demonstrated she is a successor in interest as Decedent's legal spouse, she accordingly may pursue a survival claim under California law. *See* Cal. Code Civ. P. § 377.30. Thus, Marquieta McNeil has pled standing at this juncture to maintain a civil rights claim under § 1983. *See Robertson*, 436 U.S. at 588–90 (1978) (holding a § 1983 action may survive the decedent if state law authorizes a survival action).

7

Second, as to Taneka McNeil, Plaintiffs allege Taneka McNeil is a successor in interest by virtue of her status as a putative spouse. (Declaration of Taneka McNeil, Doc. No. 28-3 ¶ 2.) California law provides that where a marriage is void or voidable, but one or more of the spouses believed, ***in good faith***, that the marriage was valid, a court may award the party the status of putative spouse. *See Allen v. Western Conference of Teamsters Pension Trust Fund,* 788 F.2d 648, 650 (9th Cir. 1986) (referencing Cal. Fam. Code § 2251). This status has been held to entitle the spouse to treat marital property as community property, take by intestacy, and sue for wrongful death, among other things. *See id.*

Generally, the good faith belief in the validity of marriage is a question of fact. *See Estate of Vargas*, 36 Cal. App. 3d 714 (1974). In addition, courts in this Circuit have held in the context of a § 1983 survival action that whether a putative spouse had a good faith belief is a question of fact. *See, e.g.*, *Lawrence v. City of San Bernardino*, No. CV04-00336 FMC SGLX, 2006 WL 5085247, at *7 (C.D. Cal. May 17, 2006) (denying the defendants' summary judgment based on a putative spouse's lack of standing to bring a § 1983 survival claim and a wrongful death claim). Circumstances considered in determining whether a spouse had a good faith belief that the marriage was valid include: (1) the claimant's educational background; (2) the claimant's degree of sophistication; (3) the claimant's familiarity and experience with marriage and divorce requirements and laws; (4) the claimant's reliance on assurances made by the bad faith party, and how those assurances were affected by differences in the parties' age, education, and sophistication; and (5) other facts evidencing the claimant's good faith belief in the marriage, such as standing in the community, marriage documents, and family activities. *See Spellens v. Spellens*, 49 Cal. 2d 210 (1957).

Here, Plaintiffs assert that despite the fact that Marquieta McNeil was Decedent's lawful wife, Taneka McNeil had a good faith belief that she and Decedent were legally married. (Declaration of Taneka McNeil, Doc. No. 28-3 ¶ 2.) Decedent and Taneka McNeil's wedding license reflects that she and Decedent's marriage was solemnized on

June 1, 2010, at the Sacramento County Clerk/Recorder's office. (*Id.*) Taneka McNeil also states that she has been disabled since 2008 due to kidney disease/failure, lives on $930/month SSI disability income, and was dependent on cash payments from Decedent of about $20 to $200 every two to three weeks beginning in fall 2015. (*Id.*) Until his death in June 2018, Taneka McNeil was unaware Decedent had any other wives. (*Id.*)

In the event that the Court does not dismiss both wives' claims, County Defendants argue in the alternative that the Court should hold an evidentiary hearing to determine which surviving spouse has standing to bring these claims. However, County Defendants do not cite any authority to support their position that only one spouse may have standing to sue in a survival or a wrongful death action. The Court is also unaware of any case law addressing this issue of competing survival claims between two spouses in the context of a § 1983 action. The Court however notes that California law generally accords putative spouses equal status with legal spouses. *See, e.g., Estate of Hafner*, 229 Cal. Rptr. 676 (Cal. App. 1986) (putative spouse shares half of the estate with legal spouse as quasi-marital property). But in any event, while the question of whether Taneka McNeil had a good faith belief in the validity of her marriage is a question for a jury, the Court does not find that Taneka McNeil has alleged enough at the pleading stage to determine whether she qualifies as a putative spouse. Indeed, the Complaint lacks any allegation as to Taneka McNeil's putative spouse status, and her declaration fares no better. Although she attaches her marriage license with Decedent, she only claims in a conclusory fashion she was unaware of Decedent's other marriage without any detail as to the circumstances which would give rise to a good faith belief that she was the only spouse. Accordingly, the Court will **DISMISS** Taneka McNeil's claims **WITH LEAVE TO AMEND** to provide more detailed facts.

### (2) Tammy Davis

Next, County Defendants assert California law does not afford Tammy Davis standing to bring claims individually for wrongful death, or as a successor in interest. Plaintiffs do not address standing as to Davis in their opposition brief. (Doc. No. 28.) In

her declaration, Davis states she is authorized to act on behalf of Decedent's successor in interest under California Probate Code § 6401(c)(2). However, that code section does not provide support for Davis. The property at issue would be considered Decedent's separate property, and under California Probate Code § 6401, a decedent's surviving spouse is entitled to the "entire intestate estate if the decedent did not leave any surviving issue, parent, brother, sister, or issue of a deceased brother or sister." Thus, there is no provision under California law for an aunt to be a successor in interest. *Id.* Additionally, Davis does not explain how she is somehow permitted to act on the surviving spouses' behalf. Because Davis is not a successor in interest of Decedent, and because there is no support for Davis's contention that she is authorized to act on behalf of either Marquieta McNeil or Taneka McNeil, Davis does not have standing. Her claims are hereby **DISMISSED WITHOUT LEAVE TO AMEND**.

### b) Plaintiffs' Standing to Assert Bane Act Claims

"The Bane Act is simply not a wrongful death provision." *Bay Area Rapid Transit District v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995). The Bane Act "clearly provides for a *personal* cause of action for the victim of a hate crime," and "is limited to plaintiffs who themselves have been the subject of violence or threats." *Id.* (emphasis in original). *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1138 (N.D. Cal. 2015) (dismissing Bane Act claim with prejudice for lack of standing). In the instant case, Plaintiffs have not established that they "themselves have been the subject of violence or threats." *Bay Area Rapid Transit District*, 38 Cal. App. 4th at 144. County Defendants did not deprive Plaintiffs of their own substantive due process rights by subjecting the Plaintiffs to threats, intimidation, or coercion. Plaintiffs argue that Defendants deprived them of their right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to personal relation. (Compl. ¶ 20.) At most, Plaintiffs were deprived of their substantive due process rights because of the acts or threat of acts of violence allegedly committed by Defendants against Decedent. This type of "derivative liability"

claim is not actionable under the Bane Act. *See Bay Area Rapid Transit District*, 38 Cal. App. 4th at 144–45.

For the reasons stated above, the Court **GRANTS** County Defendants' motion to dismiss Plaintiffs' claim under the Bane Act. Moreover, the Court finds this claim barred as a matter of law and is therefore dismissed **WITHOUT LEAVE TO AMEND**. *See Lopez, 203 F.3d at 1130* (court may dismiss claim without leave to amend where "pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

### 2. Sufficiency of Facts to Maintain § 1983 Claims

Next, County Defendants asks the Court to dismiss the § 1983 claims against them for improper pleading, and for failure to state a cognizable legal theory. (Doc. No. 16-1 at 13.) Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986). A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (internal citation omitted). Similarly, "a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused an injury." *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011). "Instead, a plaintiff must 'establish the integral participation' of the officers in the alleged constitutional violation." *Id.* (citing *Jones*, 297 F.3d at 935). A plaintiff can allege that a group of officers participated in specific conduct, however, when it is "facially plausible" that multiple individuals might partake in the conduct. *Isakhanova v. Muniz*, No. 15-CV-03759-TEH, 2016 WL 362397, at *4–5 (N.D. Cal. Jan. 29, 2016) (dismissing a claim because it was not "facially plausible" that twelve police officers would search a plaintiff's cell phone).

Here, the Complaint names seventeen defendants, including National City, eight National City police officers, and eight San Diego County sheriff deputies. However, the Complaint is replete with the improper lumping of defendants. For example, Plaintiffs allege several conclusory statements broadly referencing "Defendants" generally. In these instances, it is unclear whether Plaintiffs are referencing the National City defendants, or the County Defendants, and additionally which specific individual defendant when appropriate. As just a few examples of these improper pleading practices, Plaintiffs state in their Complaint: "Defendants placed a surgical mask with medical-grade fabric and mesh protective sock over [Decedent's] head." (Compl. ¶ 4); "Defendants' actions" caused Decedent's medical condition based on a failure to summon medical care (Compl. ¶ 12); that "Defendants" prevented Decedent's booking into the jail "where Deputy Sheriffs could summon immediate medical care" (*id.* ¶ 34). At other times, Plaintiffs reference "Defendants" but refer to actions by National City and its officers. (*See e.g.*, *id.* ¶ 15 (referencing the arrest and holding of decedent for two hours).) Thus, in light of Plaintiffs' improper pleading practices, the Court **GRANTS** County Defendants' motion to dismiss Plaintiffs' § 1983 claims with **LEAVE TO AMEND** to add more specificity as to whether the allegations refer to National City officers, County sheriffs, and where appropriate, which specific individual officer.

In addition to raising the issue with the group pleading, County Defendants also argue that Plaintiffs have not plausibly stated a claim for (1) excessive force, (2) deliberate indifference to serious medical needs, (3) substantive due process, and (4) failure to supervise, train, or take corrective measures. (Doc. No. 16-1 at 16.) However, the question of whether Plaintiffs have plausibly stated these claims is one more appropriately addressed after an amended complaint curing the group pleading deficiencies, should Plaintiffs choose to file one. Furthermore, Plaintiffs seek to amend their "Fourth Cause of Action, naming County Defendants who were supervisors at the San Diego County Central Jail for Mr. Earl McNeil [sic] detention, arrest, and transportation." (Doc. No. 28 at 14.) As to this fourth claim, County Defendants argue that "the complaint is completely devoid of facts

indicating that the County Defendants are supervisors or setting forth prior instances involving County Sheriff's Deputies that should have put these specific Sheriff employees on notice of a deficiency to supervise, train, or discipline." (Doc. No. 16-1 at 20.) Therefore, the Court will allow Plaintiffs leave to amend to add facts to adequately plead their fourth claim.

### 3. Entitlement to Injunctive Relief

County Defendants additionally seek dismissal of Plaintiffs' claim for injunctive relief. (Doc. No. 1 at 22.) To obtain an injunction, Plaintiffs must establish that a "real or immediate threat" exists that they will be wronged again. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Where the activities sought to be enjoined have already occurred, the Court cannot undo what has already been done, and there is no prospective harm to the plaintiffs, the action is moot and no injunction can be granted. *ICR Graduate Sch. V. Honig*, 758 F. Supp. 1350, 1354–55 (S.D. Cal. 1991). Here, Decedent has unfortunately already passed away. As a result, Defendants' alleged conduct cannot be repeated as to Decedent. Therefore, an injunction is not an appropriate remedy. The motion to dismiss is **GRANTED** and Plaintiffs' claims for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND**.

### B. Plaintiff's Request for Leave to Amend

Having addressed Defendants' motion, the Court now turns to Plaintiffs' request for leave to amend. Plaintiffs request leave to add new facts regarding Defendants' use-of-force policies to support a violation of use-of-force. (Doc. No. 28 at 2.) After review of the proposed amendments, and finding no undue delay, bad faith, or dilatory motive, the Court finds it appropriate to **GRANT** Plaintiffs' leave to amend their Complaint. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.").

//

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motion to dismiss Plaintiffs' complaint **IN PART**. (Doc. No. 16.) Moreover, the Court also **GRANTS** Plaintiff's request for leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."). Plaintiffs will have **twenty-one (21) days** from the date of this Order to file their amended complaint addressing the deficiencies noted herein.

**IT IS SO ORDERED.**

Dated:  November 19, 2020

*[signature]*
Hon. Anthony J. Battaglia
United States District Judge