*Law Offices of Douglas L. Applegate*
Douglas L. Applegate, S.B.#109155
380 Melrose Dr Suite 207 Vista CA 92081
TEL: 888-583-2266 FAX: 888-583-2266
*Doug@Applegateslaw.com*
Attorneys For Plaintiffs **Tammy Davis, Taneka McNeil**

**Genevieve Jones-Wright, Esq**
2670 Fifth Ave., Suite 220, San Diego, CA 92103
(619) 736-3550 joneswrightesq@gmail.com
Attorneys For Plaintiffs Marquieta McNeil

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TAMMY DAVIS, TANEKA McNEIL; MARQUIETA R McNEIL** ) **Plaintiff,** ) vs. ) **CITY OF NATIONAL CITY, MANUEL RODRIGUEZ JOSEPH B CAMACHO, GIOVANNI A CORADO, GONZALEZ, DENNIS J LEACH, ROBERT A RUDE, CHAD RYUMA SAKAMOTO, MARK D SEGAL, SHERIFF DEPUTY BENNER, SHERIFF DEPUTY DE LA TORRE, SHERIFF DEPUTY FRANTZ, SHERIFF DEPUTY KRIEG, SHERIFF DEPUTY KURTZ, SHERIFF DEPUTY PALMER, SHERIFF DEPUTY SEABRON, SHERIFF DEPUTY SISTO[1], AND DOES 1 THROUGH 30 INCLUSIVE,** ) **Defendants** ) | **Case No.: 3:19-cv-00534-AJB-AHG** <br><br> **FIRST AMENDED COMPLAINT** <br><br> 1. DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. § 1983);  2. DEPRIVATION OF CIVIL RIGHTS - FAILURE TO PROVIDE MEDICAL CARE (42 U.S.C. § 1983);  3. SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983); 4. DEPRIVATION OF CIVIL RIGHTS – FAILURE TO SUPERVISE, TRAIN CAUSING CONSTITUTIONAL VIOLATIONS (42 U.S.C. § 1983);  5. DEPRIVATION OF CIVIL RIGHTS – MONELL VIOLATIONS (42 U.S.C. § 1983) DEMAND FOR JURY TRIAL <br><br> Judge:        Anthony J. Battaglia <br> Magistrate:  Allison H. Goddard <br><br> Complaint Filed:   March 20, 2019 <br> Trial Date:        None set |

---

[1] All named San Diego Sheriff Deputies were involved in SDSD Case No. 18-127114 at the San Diego County Central Jail

<u>COMPLAINT FOR DAMAGES</u>

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

COMES NOW PLAINTIFFS[2] TANEKA McNEIL (with Plaintiff Taneka McNeil Supplemental Affidavit attached as Exhibit 1) and MARQUIETA McNEIL (collectively "Plaintiffs"), individually and as successor(s) in interest to Decedent Earl McNeil, and allege in their Complaint against defendants **NATIONAL CITY**, **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ** (hereinafter also referred to "**RODRIGUEZ**"), National City Police Officer **JOSEPH B CAMACHO** (hereinafter also referred to "**CAMACHO**"), National City Police Officer **GIOVANNI A CORADO** (hereinafter also referred to "**CORADO**"), National City Police Officer **GONZALEZ** (hereinafter also referred to "**GONZALEZ**"), National City Police Officer **DENNIS J LEACH** (hereinafter also referred to "**LEACH**"), National City Police Officer **ROBERT A RUDE** (hereinafter also referred to "**RUDE**"), National City Police Officer **CHAD RYUMA SAKAMOTO** (hereinafter also referred to "**SAKAMOTO**") National City Police Officer **MARK D SEGAL** (hereinafter also referred to "**SEGAL**"), **SHERIFF DEPUTY Benner** (hereinafter also referred to "**Benner**"), **SHERIFF DEPUTY De La Torre** (hereinafter also referred to "**De La Torre**"),  **SHERIFF DEPUTY Frantz** (hereinafter also referred to "**Frantz**"), **SHERIFF DEPUTY Krieg** (hereinafter also referred to "**Krieg**"), **SHERIFF DEPUTY Kurtz** (hereinafter also referred to "**Kurtz**"), **SHERIFF DEPUTY Palmer** (hereinafter also referred to "**Palmer**"), **SHERIFF DEPUTY Seabron** (hereinafter also referred to "**Seabron**"), **and SHERIFF DEPUTY Sisto** (hereinafter also referred to "**Sisto**") and DOES 1 through 30, inclusive, (collectively "Defendants"), allege as follows:

INTRODUCTION

1.      This civil rights action seeks compensatory and punitive damages from

---

[2] The Court (1) ordered that Tammy Davis lacked standing and dismissed her claims WITHOUT LEAVE TO AMEND; (2) dismissed Taneka McNeil's claims WITH LEAVE TO AMEND; and (3) recognized the standing of Marquieta McNeil. ECF No. 44 Filed 11/19/2020.

individual Defendant National City Police Officers[3] [**CAMACHO**, **CORADO**, **GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL, RODRIGUEZ**]  from senior National City Police Department  (hereinafter also referred to "NCPD") officials defendant [**RODRIGUEZ**], from National City and from San Diego County Sheriff deputies[4] [**Benner**, **De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**], for the violation of fundamental rights under the United States Constitution and state law in connection with the brutal and tragic police arrest, torturous abuse and killing of EARL McNEIL, (hereinafter also referred to as, "DECEDENT") on May 26, 2018.

<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

2.     On May 26, 2018, at 5:28 a.m., EARL McNEIL contacted National City Police Department (hereinafter referred to as "NCPD") dispatch using an emergency telephone near the front door of the police department. EARL McNEIL asked for someone to come out front and said he wanted to turn himself in on a warrant. He said he wanted to kill someone and said he was high. EARL McNEIL said he did not know his name and hung up the phone. He called back a few moments later and identified himself as Earl McNeil. He picked up the phone a total of four times but only spoke to the emergency operator twice. He hung up all four calls. His initial activity and calls were recorded by fixed video surveillance cameras at NCPD and their dispatch audio system.  Dispatches to Defendants included the following information: a description of McNeil including  a statement he was African American; he had said he had a warrant and wanted to kill people; he kept hanging up the phone; he appeared very agitated; and stated he was high. Defendants (two NCPD officers) were the first to contact McNeil at the front of the station at 05:32 a.m. He denied calling the police. He agreed to let police check him for weapons. The first Defendant National City officers [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**]  detained McNeil and placed him in handcuffs. McNeil became agitated and began yelling and pulling away. When Defendants

---

[3] National City Police Officers involved in NCPD Case No. 18-02597
[4] San Diego Sheriff Deputies involved in SDSD Case No. 18-127114 at the County Jail

[**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL,** began a pat down search of McNeil for weapons, he lunged toward a railing along the edge of the landing that drops down onto hard, rocky landscape. McNeil was taken to the ground by the Defendants National City police officers  [**CAMACHO**, **CORADO**, **GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**]  and detained for being possibly under the influence of a controlled substance. *McNeil was perspiring in spite of the cool weather.* Defendants National City police officers  [**CAMACHO**, **CORADO**, **GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**]  knew prisoner Earl McNeil needed immediate medical care and Defendants [**CAMACHO**, **CORADO, GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] failed to take reasonable action to summon such medical care from the time of DECEDENT's arrest and detention for the next two hours until 07:28 a.m.

3.      Defendants [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] piled on holding EARL McNEIL down on the ground. McNeil said he was "crazy" and then said he was "not crazy". He said he had a warrant, had "dope" in his pocket, tried to reach into his pocket, said he had smoked the "dope", and said to the officers, "[Y]ou're not the police". Defendants [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**]  decided to utilize the WRAP that is a maximum restraint system  that fixes the detainee in a seated upright position, with his feet stretched out straight in front of him and his hands handcuffed behind his back. A baggie containing methamphetamine (1.8 grams) was retrieved from McNeil's right front pants pocket and a knife was removed from his front left pants pocket. When McNeil was addressed using his first name and told to stop reaching for his pocket, McNeil said, "Who's Earl?" Defendants  [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] never took DECEDENT McNeil's vital signs but noted that McNeil was sweating profusely despite the low morning temperature.

4.      For a brief period, Mr. McNeil stopped yelling and was calm. While the WRAP was being affixed, Defendants  [**CAMACHO**, **CORADO, GONZALEZ,**

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

LEACH, **RUDE**, **SAKAMOTO**, **SEGAL**]  placed a surgical mask with medical-grade fabric and mesh protective sock over his head; DECEDENT's teeth were ground on the cement injuring his mouth; McNeil continued to yell, repeatedly saying he could not breathe and that the Defendants  [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**]  were killing him; and *McNeil continued to make statements about having a seizure and being unable to breathe.* Once DECEDENT was in the wrap and protective spit sock, Defendants'[5] continuing actions caused DECEDENT's death from respiratory compromise and brain damage from lack of oxygen, by: (1) Defendants  [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**] failure to reasonably summon medical care for nearly 2 hours while Defendants [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**] knew of EARL MCNEIL need for immediate medical care, (2) placed objects over DECEDENT'S mouth and nose, and (3) positioned DECEDENT so as to cause respiratory compromise and brain damage. Defendants  [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**]  intentionally and recklessly (1) delayed the medical treatment of DECEDENT necessary to prevent respiratory compromise and brain damage from lack of oxygen book (2) caused DECEDENT'S physical distress to worsen and deteriorate while DECEDENT struggled against the WRAP, (3) prevented DECEDENT'S medical evaluation and booking into the San Diego Central Jail ("SDCJ") for nearly 2 hours and (4) caused DECEDENT'S death.

5.      Once Mr. McNeil was secured in the WRAP, he was placed on his side briefly and hit his head on the pavement. He spat blood and saliva through the spit sock. McNeil stated, "Take me to jail. l killed somebody." Defendants [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**] carried McNeil to a patrol SUV and placed him in the back. While being carried, he yelled that he was being kidnapped by the Mexican Mafia and the officers were going to sell him. Fifteen minutes

---

[5] **CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**.

FIRST AMENDED COMPLAINT                    3:19-cv-00534-AJB-AHG
*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

elapsed from the officers' first contact with McNeil, until he was secured in the back of the police SUV at 05:47 a.m.

6.     McNeil was then driven to a holding facility in the National City Police Station. Due to his constant nonsensical yelling, agitated behavior and struggle against the WRAP maximum restraint system, he remained in the vehicle with the window partially down and the air conditioning on for approximately one hour and fourteen minutes, while Defendants [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**] appeared to complete paperwork and while Defendants [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] saw DECEDENT continue to yell nonsensically and fight against the WRAP maximum restraint system. Defendants [**CAMACHO**, **CORADO**, **GONZALEZ**, **LEACH**, **RUDE**, **SAKAMOTO**, **SEGAL**] involved in the initial contact had body worn camera's (BWC' s) running during their encounter with McNeil, that captured Defendants [**CAMACHO, CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] laughing that DECEDENT McNeil was the *"highest [methamphetamine arrest]* this year."

7.     While DECEDENT yelled nonsensically and fought the WRAP at the National City Police Station, Defendant **Rude** contacted San Diego County Probation Officer Radabaugh who issued a Probation Violation Hold for McNeil per PC §3455.

8.     Defendant National City police officers [**CORADO, GONZALEZ**] drove DECEDENT McNeil out of NCPD headquarters at 07:05 a.m. During the eight-minute ride, DECEDENT McNeil's head struck numerous times against the plexiglass partition separating the back seat from the officers. DECEDENT McNeil screamed "help", but Defendants [**CORADO, GONZALEZ**] told DECEDENT McNeil if he could speak, he could breathe. DECEDENT McNeil said he was suicidal and needed to see a doctor. During that transport and upon arrival at SDCJ, DECEDENT McNeil shouted "help" repeatedly and appeared to have seizures several times.

9.     Upon arrival at SDCJ Defendants [**CORADO, GONZALEZ**] ripped DECEDENT McNeil from the back of the SUV. Defendants [**CORADO, GONZALEZ,**

3:19-cv-00534-AJB-AHG
*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

**Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] next threw DECEDENT on a gurney and placed a second spit sock over the first spit sock. DECEDENT McNeil then thrashed from side to side so that his upper body was hanging off the side of the gurney. The deputies released the chest to ankle strap of the WRAP so DECEDENT McNeil could lie flat on his stomach on the gurney while the jail nurse began to examine him at 07:18 a.m. The jail nurse evaluated DECEDENT McNeil, who remained in an agitated state throughout the evaluation and continued to yell and scream. The jail nurse noted signs of potential excited delirium, as he was sweating profusely, had an elevated temperature of 100°F, and a rapid pulse of 120 beats per minute. His respiration was abnormal 22 breaths per minute. DECEDENT McNeil continued to move back and forth. He stated he was homicidal and suicidal. He said he wanted to see a doctor. DECEDENT McNeil repeatedly said "ouch" when the nurse touched his head, The jail nurse, in consultation with Sheriff's staff, declined to admit DECEDENT McNeil to jail and instead referred him for a medical evaluation and a psychiatric evaluation at 07:26 a.m. The call for paramedics was made by NCPD dispatch in response to a cell phone call from Defendants [**CORADO, GONZALEZ**]. Fire Department records show receipt of the call from NCPD dispatch at 07:28 a.m. Defendants [**CORADO, GONZALEZ, Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] placed a second spit sock over DECEDENT'S head causing him to become more agitated in his struggle with the WRAP maximum restraint system. DECEDENT McNeil continued to spit through the two spit socks, which had become saturated with bodily fluids. Defendant **Frantz** pulled the collar of DECEDENT McNeil's t-shirt up and held it up in front of McNeil's face to shield the deputies from further contact with his bodily fluids. DECEDENT McNeil bit on the shirt. Despite knowing that DECEDENT had requested and needed immediate medical attention for nearly two hours, Defendants [**CAMACHO, CORADO, GONZALEZ, LEACH, RUDE, SAKAMOTO, SEGAL, Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] had failed to request paramedics for medical treatment that would have prevented DECEDENT McNeil's death.

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

10. San Diego Fire Department Paramedics arrived at 07:34 a.m. Approximately 30 seconds before the paramedics arrived, DECEDENT *McNeil had quieted down*. He continued to grunt and grumble. The spit socks were removed to check for vital signs. DECEDENT McNeil was growling and moving his head from side to side as he was transferred to the paramedic gurney. When DECEDENT was taken inside the ambulance at 07:37 a.m. DECEDENT McNeil then became more lethargic and had a weak carotid pulse. After sustaining great pain, suffering and anguish without medical care for over two hours and after less than six minutes in the ambulance, paramedics determined DECEDENT McNeil had stopped breathing and his heart stopped beating. He was removed from the ambulance immediately, taken out of the WRAP, handcuffs were removed and CPR was started; then moved back into the ambulance and taken to UCSD hospital. The paramedics left SDCJ for UCSD hospital at 07:53 a.m. Upon arrival to the Emergency Department. the DECEDENT was in pulseless electrical activity and was intubated. Diagnostic imaging revealed an anoxic brain injury. His condition continued to decline until his death 16 days later at UCSD hospital on June 11, 2018.

11. Defendants **National City and RODRIGUEZ** failed to train subordinates and to receive training for The Wrap restraint system [*see* The Wrap Basic Application Manual, attached Exhibit 2] and *inter alia*, follow the "Precaution 2" for the Wrap:

> Precaution 2 – Medical Attention:
>
> If a restrained subject ***complains of or exhibits*** any medical concerns, seek immediate medical attention. Medical treatment can be provided while the subject is restrained in The WRAP.
>
> Examples of health concerns are:
>
> • Respiratory Distress (i.e. coughing, gasping, gagging, shortness of breath)
>
> • Sudden quiet or inactivity (especially after a violent struggle)
>
> • Chest pains, shooting pains down the arm
>
> • Change in facial color
>
> • Elevated body temperature (I'm burning up!)

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

• Vomiting

• Suspected drug behavior

• Sweating profusely

12.    Defendants [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL, Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] and law enforcement in San Diego County and throughout California knew for years prior to 2018 that:

- methamphetamine deaths had exceeded opiate deaths,

- increased physical exertion caused by struggling with the officers and against his physical restraints (i.e. the WRAP and handcuffs) was consistent with DECEDENT's methamphetamine use,

- Both methamphetamine use along with physical exertion increased the demand for oxygen causing a higher pulse rate and respiration,

- Medical treatment for Methamphetamine overdose required giving fluids through an IV, monitoring your heart rate and medications to slow blood pressure and ease anxiety.

13.    EARL McNEIL died as a direct result of the DEFENDANTS' actions and failure to act that  caused Decedent's respiratory compromise, brain damage from lack of oxygen, and DEFENDANTS' failure to timely summon medical care that would have prevented DECEDENT'S death. His death was "at the hands of another," therefore, the manner of death was listed as "homicide" by the San Diego County Medical Examiner.

14.    DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL, Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] ACTED with specific intent to cause serious bodily injury upon Decedent EARL McNEIL, and, to intentionally violate his civil rights.

15.    Defendant **NATIONAL CITY**, National City Police Chief Defendant **MANUEL RODRIGUEZ** and DOES 1 through 20 also proximately caused DECEDENT's death and Plaintiff's injuries and are liable under state law and under

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

principles set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978), by failing, inter alia, to train DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL**] how to use the Wrap and to timely summon medical care immediate for civilians in need of medical care.

16.    The policies and customs behind the detentions of civilians in need of immediate medical care and Defendants' failure to take reasonable action to summon such medical care as in the when DEFENDANTS arrested and held EARL MCNEIL for nearly for two hours before paramedics arrived at SDCJ, are fundamentally unconstitutional, illegal under state law and constitute a menace of major proportions to the public.

17.    Accordingly, insofar as Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the killing of EARL MCNEIL and to challenge the NATIONAL CITY's unconstitutional policies and practices, this civil rights action is imperatively in the public interest.

JURISDICTION AND VENUE

18.    Plaintiffs assert claims for relief arising under, and for violations of the following laws: (a) Federal Civil Rights Act under 42 U.S.C. Sections 1983, 1985, 1986, and 1988; (b) Monell v. Department of Social Services; (c) The Fourth Amendment of the United States Constitution; (d) The Eighth Amendment of the United States Constitution; (e) The Fourteenth Amendment of the United States Constitution; (e) Equal Protection Clause and Due Process Clause of the Fifth Amendment of the United States Constitution.

19.    Plaintiffs assert claims for relief arising under, and for violations of, the following laws: (a) The Fourteenth Amendment of the United States Constitution.

20.    The jurisdiction of this Court is, therefore, founded on Federal Question Jurisdiction pursuant to 28 U.S.C. Section 1331.

21.    This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. Section 1983).

22.     Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1343(3) and (4), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of rights, privileges, and immunities secured to a plaintiff by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

23.     Venue is proper in this Court under 28 U.S.C. Section 1391(b), because defendants reside in, and in all incidents, events, and occurrences giving rise to this action occurred in the County of San Diego, California.

<u>PARTIES</u>

24.     EARL McNEIL, up until his death on June 11, 2018 was a resident of San Diego County during all times relevant hereto.

25.     Plaintiffs maintain the present action for themselves individually and as heirs at law and successors in interest to the estate of EARL McNEIL, including those for violation of DECEDENT's civil rights and for the state law claims for relief enumerated herein.

26.     Plaintiffs are the next of kin and heirs of the deceased EARL McNEIL. They bring these claims in their individual capacity for deprivation of their Constitutional rights.

27.     At all relevant times, Defendant **NATIONAL CITY**, and its police department is and was a duly organized public entity and existing under the laws of the state of California. Furthermore, at all relevant times, NATIONAL CITY POLICE Department, (hereinafter also referred to as "NCPD"), was an agency of the defendant **NATIONAL CITY**.  Plaintiffs are informed and believe and thereon allege that Defendants **NATIONAL CITY** and NCPD were the employers of defendants **RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20.

28.     Plaintiffs are informed and believe, and thereon allege, that Defendants **RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20, are, and at all times

herein mentioned were, duly appointed and acting as police officers for NATIONAL

CITY and NCPD and were at all material times acting under color of state of law, and as

employees, agents and representatives of every other Defendant. Defendants

**RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**,

**SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20 were acting under color

of law and within the course and scope of their employment, including but not limited to

under California Government Code Sections 815.2, 820, and 825, with Defendant

NATIONAL CITY and NCPD on May 26, 2018, the date of the incident and Defendants

**NATIONAL CITY, RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH,**

**RUDE**, **SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20 are legally

responsible for all damages caused by the intentional conduct of Defendants

**RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**,

**SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20 as alleged herein.

29.     At all relevant times mentioned herein, Defendants **BENNER, DE LA**

**TORRE, FRANTZ, KRIEG, KURTZ, PALMER, SEABRON, AND SISTO**, and

Defendants DOES 21 through 30 were  acting within the course and scope of their

employment and under color of law as a sheriff deputy of the San Diego County and San

Diego Sheriff Department (hereinafter referred to as "SDSD"), and were authorized by the

San Diego County to perform the duties and responsibilities of sworn sheriff deputies and

all acts hereinafter complained of were performed by them within the course and scope of

his duties as a sheriff deputy, officer and official. Defendants **BENNER, DE LA TORRE,**

**FRANTZ, KRIEG, KURTZ, PALMER, SEABRON, AND SISTO** and Defendants

DOES 21 through 30 are sued herein in their individual capacity and in their official

capacity as a sheriff deputy and/or as other employee of San Diego County.

30.     At all relevant times hereto, DEFFENDANTS and Defendants DOES 1

through 30, and each of them, were acting within the course and scope of their

employment and under color of law as law enforcement officers, and/or civilian employees

of the NCPD, a department and/or subdivision of Defendant NATIONAL CITY, and at all

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

times were acting with permission and consent of their co-Defendants. DEFENDANTS, and each of them, were specifically authorized by Defendant **NATIONAL CITY**, NCPD , San Diego County and/or the SDSD to perform the duties and responsibilities of sworn police officers and/or deputies of and for Defendant **NATIONAL CITY**, NCPD , and/or San Diego County, and all acts hereinafter complained of were performed by them within the course and scope of their duties as police officers, deputies, and officials, and are herein sued in their individual capacities and in their official capacities as police officers, deputies, sergeants, captain, commanders, supervisors, policy makers and/or as other employees of Defendant **NATIONAL CITY**, NCPD , and/or San Diego County. DEFENDANTS, and each of them, at all times relevant hereto, were acting under color of law, under the color of the statutes, ordinances, regulation, policies, customs, practices and usages of Defendant **NATIONAL CITY**, NCPD , and/or San Diego County.

31.     Defendants, **NATIONAL CITY, RODRIGUEZ, CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO** and **SEGAL** and Defendants DOES 1 through 20 and the NCPD encouraged, assisted, ratified and/or with deliberate indifference failed to prevent all of the herein acts and omissions of each DEFENDANT, and each of them.

32.     At all relevant times herein, Defendant **RODRIGUEZ,** and DOES 1 through 20  were supervisors, employees and/or policy makers for Defendants and **NATIONAL CITY**, which employed unlawful, organized and illegal customs and practices of failure to summon medical care, use of unreasonable and/or excessive force and false arrests which lacked probable cause. Said misconduct was encouraged, tolerated and condoned by Defendants, and each of them.

33.     At all relevant times to the present complaint, Defendants DOES 1 through 20, inclusive, were acting within their capacity as employees, agents, representatives and servants of Defendant **NATIONAL CITY** which is liable under the doctrine of respondeat superior, pursuant to Sections 815.2, 820 and 825 of the California Government Code, et al.

---

13

34.     This egregious in-custody death of EARL McNEIL has sparked outrage in the community and multiple protests organized by the community have occurred against DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL,** Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto]   and DOES 1 through 30.

35.     The use of force against decedent EARL MCNEIL by and through the WRAP maximum restraint system, was excessive and objectively unreasonable under the circumstances, especially because at all relevant times DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL,** Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto]  knew prisoner EARL MCNEIL needed immediate medical care; DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL,** Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto] intentionally failed to summon such medical care and DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL**] delayed and prevented DECEDENT'S booking into the San Diego Central Jail ("SDCJ") where Deputy Sheriffs could summon immediate medical care.

36.     After being arrested and restrained in the Wrap and handcuffs, EARL MCNEIL was immobile, his breathing compromised, and in obvious and critical need of emergency medical care and treatment. DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL,** Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto] did not timely summon medical care or permit medical personnel to treat EARL MCNEIL. This delay of medical care to DECEDENT EARL McNEIL caused EARL McNEIL suffering, extreme physical pain and emotional pain and was a substantial factor / cause of EARL McNeil's death and violation of his civil rights.

37.     As a direct and proximate result of the aforementioned acts of DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**,

**SAKAMOTO, SEGAL, Benner, De La Torre, Frantz, Krieg, Kurtz, Palmer, Seabron, Sisto**] and Doe 1 through 30, and each of them, EARL McNEIL suffered the following injuries and damages which are recoverable by Plaintiffs under the Federal and California Civil Rights statutes identified herein:  (a) Violation of his constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person and denial of Equal Protection and Due Process of Law; (b) Conscious physical pain, suffering, and emotional trauma; (c) Medical bills and expenses and future medical care costs and expenses; (d) Loss of income and lost earning capacity; (e) Attorneys' fees and costs pursuant to 42 U.S.C. Section 1988; and (e) Violations of Constitution of the State of California and the rights secured to EARL McNEIL and under California Civil Code §43, §52 and §52.1 and California Gov Code §845.6 as herein alleged and described herein.

38.    Plaintiffs submitted a Government tort claim to the Defendants on November 26, 2018, Said claim was returned by the Defendant **NATIONAL CITY** on January 7, 2019 as deemed denied by operation of law.

**FIRST CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS FOR UNREASONABLE SEARCH AND SEIZURE & EXCESSIVE FORCE (42 U.S.C. § 1983); (By Plaintiffs against each DEFENDANT and DOES 1 through 30, inclusive)**

39.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth herein.

40.    The unjustified restraint of decedent by DEFENDANTS deprived EARL MCNEIL of his rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendments to the Constitution  by among other acts, subjecting EARL MCNEIL to excessive force AND restraint, and use of the WRAP without necessary immediate medical attention and ultimately deadly force where no force was necessary. As stated herein, Decedent EARL MCNEIL and Plaintiffs, as citizens and individuals, are protected by the laws and Constitution of the State of California, as well as those of the United States, including the

First, Fourth and Fourteenth Amendments thereto of the United States Constitution, the right of privacy under the California Constitution and the rights secured to persons under Civil Code §52 and §52.1 as herein alleged and were subjected to Defendants further violations of their right as described herein.

41.    EARL MCNEIL's death was a direct and proximate result of the aforementioned violation of rights conferred by the United States Constitution and the wrongful acts and omissions perpetrated by all named DEFENDANTS while acting under the color of law and pursuant to customs, policies, and/or procedures in violations of 42 U.S.C. Section 1983.

42.    This use of deadly force (restricted breathing and failure to provide medical care) was excessive and unreasonable under the circumstances. DEFENDANTS' actions thus deprived EARL MCNEIL of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment. Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT EARL MCNEIL, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs claim funeral and burial expenses and loss of financial support.

43.    The conduct of DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT EARL MCNEIL and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT.

44.    DEFENDANTS violated their training by restricting DECEDENT EARL MCNEIL's breathing and failure to provide medical care to the person of  DECEDENT EARL MCNEIL.

45.    Plaintiffs bring this claim as DECEDENT EARL MCNEIL's successors in interest, and thereby seeks both survival and wrongful death damages for the violation of DECEDENT EARL MCNEIL's rights.

46.    Plaintiffs also seek attorney's fees under this claim.

FIRST AMENDED COMPLAINT
3:19-cv-00534-AJB-AHG
Law Offices of DOUGLAS L. APPLEGATE
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

**SECOND CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS FOR FAILURE TO PROVIDE MEDICAL CARE - (42 U.S.C. § 1983); ( By Plaintiffs against each DEFENDANTS and DOES 1 through 30, inclusive)**

47.     Plaintiffs repeats and re-allege each and every allegation in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48.     The denial of medical care by DEFENDANTS and DOES 1 through 30 deprived of his right to be secure in his person against unreasonable searches and seizures as guaranteed to EARL MCNEIL under the Fourth and Eighth Amendments of the United States Constitution and applied to state actors by the Fourteenth Amendment.

49.     As a result, suffered extreme pain and suffering and eventually suffered a loss of life and earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT EARL MCNEIL, and will continue to be so deprived for the remainder of their life. Plaintiffs is also claiming funeral and burial expenses and a loss of future financial support.

50.     DEFENDANTS  and DOES 1 through 30 knew that failure to provide timely medical treatment to could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that critical medical need, causing great bodily harm and death.

51.     The conduct of Defendants and DOES 1 through 30 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT EARL MCNEIL's, and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS and DOES 1 through 30.

52.     Plaintiffs bring this claim as a successors in interest of EARL MCNEIL and seeks both survival and wrongful death damages for the violation of DECEDENT EARL MCNEIL's rights.

53.     Plaintiffs also seek attorney's fees under this claim.

**THIRD CLAIM FOR RELIEF For Substantive Due Process - (42 U.S.C. § 1983)  (By all Plaintiffs against Defendants  and DOES 1 through 30 , inclusive)**

FIRST AMENDED COMPLAINT                              3:19-cv-00534-AJB-AHG
*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

54.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with DECEDENT EARL MCNEIL.

56.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

57.     The aforementioned actions of each DEFENDANT and Does 1 Through 30, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of EARL MCNEIL and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

58.     DEFENDANTS and Does 1 Through 30 , thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT EARL MCNEIL.

59.     As a direct and proximate cause of the acts of DEFENDANTS and Does 1 through 30 , experienced severe pain and suffering and lost his life and earning capacity. Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

60.     The conduct of DEFENDANTS and Does 1 Through 30, was willful, wanton, malicious, and done with deliberation indifference and reckless disregard for the rights and safety of DECEDENT EARL MCNEIL and Plaintiffs and therefore warrant the imposition of exemplary and punitive damages as to DEFENDANTS and Does 1 Through 30 .

61.     Plaintiffs bring this claim in each case individually for deprivation of their 14th amendment rights.

62.     Plaintiffs also seek attorney's fees under this claim.

**FOURTH CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS FOR FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE MEASURES CAUSING CONSTITUTIONAL VIOLATIONS – (42 USC § 1983);  (Plaintiffs against DEFENDANTS NATIONAL CITY, RODRIGUEZ and DOES 1 through 30 , inclusive)**

63.     Plaintiffs repeats and re-alleges each and every allegation in paragraphs 1 through 62 of this Complaint with the same force and effect as if fully set forth herein.

64.     Plaintiffs are informed and believe, and thereon allege, DEFENDANTS **NATIONAL CITY, RODRIGUEZ** and DOES 1 through 30  knew, or in the exercise of reasonable care should have known, of a history and propensity and pattern, prior to and after the time of DECEDENT EARL MCNEIL's May 26, 2018 arrest, of the use of excessive force and unconstitutional use of the WRAP without necessary immediate medical attention as in the case of DECEDENT EARL MCNEIL by DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH, RUDE**, **SAKAMOTO, SEGAL**] which lead to the unnecessary and unreasonable uses of excessive force, or use unreasonable, out of policy or unconstitutional police tactics to investigate police use of force incidents.

65.     Notwithstanding this information and history, including but not limited to DOES 1 through 30, DEFENDANT **NATIONAL CITY** AND DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ** failed to train, supervise or discipline deputies who used excessive force, used unreasonable police tactics leading to the unnecessary and unreasonable use of excessive force, used unreasonable and out of policy unconstitutional police tactics to investigate police use of force incidents, or the police department officers were the subject of prior complaint of allegations of similar conduct and those who had been the subject of allegations in federal and state courts to

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

have violated constitutional rights of others in the course and scope under color of law of their capacities as police officers of the NCPD.

66.   DEFENDANT **NATIONAL CITY's** AND DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ's (**and DOES 1 through 30) disregard of this knowledge or failure to adequately investigate and discover this pattern, custom or practice of unconstitutional violations, or existence of facts which creates the potential of unconstitutional acts, violated their duty to supervise, train and instruct their subordinates to prevent similar acts to other persons. As a result, Plaintiffs were harmed in the manner threatened by the pattern, custom, or practice.

67.   DEFENDANT **NATIONAL CITY's** AND DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ's (**and DOES 1 through 30) custom, practice, and policy resulted in their failure to take steps to properly train, supervise, investigate or instruct DEFENDANTS [**CAMACHO**, **CORADO, GONZALEZ, LEACH**, **RUDE**, **SAKAMOTO, SEGAL**] (and DOES 1 through 30) on the use of excessive force and use of the WRAP, and this was the moving force in denying immediate medical attention and the use of excessive force on DECEDENT.

68.   As a legal result of the conduct of DEFENDANT **NATIONAL CITY** AND DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ**, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

### FIFTH CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS – 42 USC § 1983 - MONELL VIOLATIONS ( By all Plaintiffs against Defendants NATIONAL CITY, RODRIGUEZ and Does 1 through 30)

69.   Plaintiffs repeats and re-alleges each and every allegation in paragraphs 1 through 68 of this Complaint with the same force and effect as if fully set forth herein.

70.   The acts and omissions of all DEFENDANTS were engaged in maliciously, callously, oppressively, wantonly, recklessly and with deliberate indifference to the rights of Plaintiffs and of DECEDENT EARL MCNEIL. Plaintiffs are informed and believe, and on the basis of such information and belief, allege that Defendant **NATIONAL CITY,**

*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

through NCPD and through DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ**, **and Does 1 through 30** with deliberate indifference and reckless disregard to the safety, security and constitutional and statutory rights of DECEDENT EARL MCNEIL, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices or customs and usages of, among other things:  (a) Subjecting citizens to unreasonable uses of force against their person, including deadly force and denial to timely summon obvious and critically needed emergency medical care and treatment as was the case with DECEDENT EARL MCNEIL; (b) Selecting, retaining, and assigning officers/deputies with demonstrable propensities for excessive force, violence and other misconduct;  (c) Failing to adequately train, supervise, and control officers/deputies in the field of law enforcement, including the use of force or to timely summon obvious and critically needed emergency medical care or permit medical personnel to treat DECEDENT EARL MCNEIL;  (d) Failing to adequately discipline officers/deputies involved in misconduct;  (e) Condoning and encouraging officers/deputies in the belief they can violate the rights of persons such as  with impunity, and such conduct will not adversely affect their opportunities for promotion and other employment benefits;  (f) Initiating, implementing, ratifying, maintaining, enforcing, tolerating, permitting, and acquiescing in an illegal "Use and Escalation of Force Policy" that does not adequately limit officers'/deputies' use of force to those cases in which it is required to make a lawful arrest or protect an officer or third-party from an immediate safety threat; and  (g) Initiating, implementing, ratifying, maintaining, enforcing, tolerating, permitting, and acquiescing in an illegal "Use and Escalation of Force Policy" that failed to comply with the requirements of the law.

71.   Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant **NATIONAL CITY**, through NCPD and through DEFENDANT **NATIONAL CITY POLICE CHIEF MANUEL RODRIGUEZ** ordered, authorized, acquiesced in, tolerated, permitted or maintained customs and usages permitting the other DEFENDANTS herein to engage in the unlawful and unconstitutional

FIRST AMENDED COMPLAINT                         3:19-cv-00534-AJB-AHG
*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

actions, policies, practices and customs or usages set forth in the foregoing paragraphs. Each DEFENDANT'S conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by DEFENDANTS or on Defendants' deliberate indifference, gross negligence or reckless disregard to the safety, security and rights of Plaintiffs and DECEDENT EARL MCNEIL.

72.    As a result of DEFENDANTS' conduct and each of their violations of Plaintiffs' and DECEDENT EARL MCNEIL's constitutional rights as set forth herein, Plaintiffs were damaged as alleged above.

PRAYER FOR RELIEF WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

FIRST, SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION BY ALL PLAINTIFFS AGAINST EACH DEFENDANT:

A.  For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.  For loss of financial support;

C.  For punitive damages against the defendants in an amount to be proven at trial;

D.  For interest;

E.  For reasonable costs of this suit and attorneys' fees, including pursuant to 42 U.S.C. Section 1988; and;

F.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: December 10, 2020          LAW OFFICES OF DOUGLAS L. APPLEGATE

                                 By: s/DOUGLAS L. APPLEGATE
                                 Attorney for Plaintiffs Tammy Davis and Taneka McNeil

DATED: December 10, 2020          By: s/GENEVIÉVE JONES-WRIGHT
                                 Attorney for Plaintiff Marquieta McNeil

///

1    Each Plaintiff hereby demands a trial by jury.

2    DATED: December 10, 2020              LAW OFFICES OF DOUGLAS L. APPLEGATE

3
                                          By: s/DOUGLAS L. APPLEGATE
4                                         Attorney for Plaintiffs Tammy Davis and Taneka
5                                         McNeil

6    DATED: December 10, 2020              By: s/GENEVIÉVE JONES-WRIGHT
7                                         Attorney for Plaintiff Marquieta McNeil

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                  3:19-cv-00534-AJB-AHG
*Law Offices of* **DOUGLAS L. APPLEGATE**
380 South Melrose Dr, Suite 207
Vista CA 92081 (888-583-2266)

# Exhibit

# 1

Douglas L. Applegate, Esq.
Law Offices of Douglas L. Applegate
380 South Melrose Drive, Suite 207
Vista CA 92081
Telephone:  (888) 583-2266
Facsimile:  (888) 583-2266
E-Mail:   dlapplegate@earthlink.net

Attorneys for Plaintiffs Tammy Davis, Taneka McNeil

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY DAVIS, TANEKA McNEIL; MARQUIETA R. McNEIL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NATIONAL CITY, *et al.,*<br><br>Defendants. | Case No.  3:19-cv-00534-AJB-AHG<br><br>**Plaintiff Taneka McNeil Supplemental Affidavit Pursuant Civ Pro Code §§377.32, 377.60**<br><br>Courtroom:  5A<br>Judge:       Anthony J. Battaglia<br>Magistrate:  Allison H. Goddard<br><br>Complaint Filed:    March 20, 2019<br>Trial Date:          None set |

I, **Taneka McNeil**, pursuant to Civ Pro Code § 377.32, declare as follows:

1.      I am the Declarant herein and a named Plaintiff in this lawsuit.  If called to testify as to the matters set forth herein, I could and would competently do so based upon my personal knowledge.

2.      I am the putative spouse of EARL LAMONT McNEIL [DoB 10/17/1977] who died in San Diego, CA 92103, on June 11, 2018; 2016 Hours, a true and correct copy of his death Certificate is attached. I have been disabled since 2008 due to kidney disease/failure and live on $930/mo. SSI disability. I

was dependent on cash payments from EARL LAMONT McNEIL that ranged from $200 to $100 to $20, in cash, every week or two weeks, excluding periods of incarceration since the fall of 2015. Until his death on June 11, 2018, I never knew Earl had any other wives. I only learned of Marquieta McNeil's "confidential" marriage license dated October 12, 2000 nearly 10 months after Earl McNeil had died. The San Diego Medical Examiner provided Earl's autopsy report to me as Earl's wife before anyone else (even before the attorneys suing the defendant police and sheriff deputies and who had also requested copies of the autopsy report).

3.     Starting when we lived in Sacramento where Earl and I got married, Earl always helped me to care for my then-very-young sons, Elijah Jackson, Ezekiel Jackson, and E'Qwan Jackson. This was worth the world to me because my kidney disease/failure required then and now dialysis multiple times each week. I cannot put a value on Earl's relationship and time with my Jackson boys [sons]. Earl was the only way that I could take care of my health while Earl watched and cared for my sons.

4.     I never came to know of an individual named Marquieta McNeil until after my husband Earl McNeil died 06/11/2018. I never heard Earl speak about any person known as Marquieta McNeil since I first met Earl. Even Earl's family never spoke of Marquieta McNeil that I ever heard or remembered before this lawsuit.

5.      I spent every night with my husband Earl while he was on life support at UCSD Medical Center ICU from his admission on 05/26/2018 until his death on 06/11/2018. I made the decision to turn off Earl's life support. Marquieta McNeil never came to the hospital to see Earl after he was attacked by police and sheriff deputies. Marquieta did not attend Earl's memorial and funeral.

6.      Although I had filed a 2012 petition of dissolution in Riverside County Superior Court, Earl and I later reconciled and our family law case was dismissed. Although Earl's mental health issues made it too difficult to live together seven days a week, we still very much enjoyed our weekends and looked forward to the take-out meals that Earl took pride in bringing home. Those meals and cash from Earl made a big difference in our lives and helped me to make our ends meet.

7.  No proceeding is now pending in California for administration of the decedent EARL LAMONT McNEIL's estate.

8.  EARL LAMONT McNEIL died intestate, leaving no will, and without any children. The surviving spouse receives one-half (1/2) of the decedent's separate property if the decedent also leaves either: (a) one child or the issue of one deceased child, or (b) no issue, both a parent or parents or their issue, or the issue of either of them. Cal Prob §6401(c)(2), authorizing me to act on behalf of the decedent's successor in interest (as defined in Civ Pro Code §377.11) with

respect to the decedent EARL LAMONT McNEIL's interest in this action and

proceeding. In addition, as a putative spouse I may assert a cause of action for

the death of my spouse caused by the wrongful act or neglect of another. Civ Pro

Code §377. 60.

9.  No other persons other than the named Plaintiffs herein has a superior

right to commence the action or proceeding or to be substituted for the decedent

in this pending action or proceeding.

10. A true and correct copy of the decedent's license and certificate of

marriage is attached to this affidavit.

I declare under penalty of perjury under the laws of the United States, and the

State of California, that the foregoing is true and correct this December 10, 2020.

/s/ *Taneka McNeil*

**Taneka McNeil**

# STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# SACRAMENTO COUNTY
#### SACRAMENTO, CALIFORNIA

### LICENSE AND CERTIFICATE OF MARRIAGE
MUST BE LEGIBLE – MAKE NO ERASURES, WHITEOUTS, OR OTHER ALTERATIONS
USE DARK INK ONLY

STATE FILE NUMBER

LOCAL REGISTRATION NUMBER **4201034002537**

**FIRST PERSON DATA** — ☐ Groom ☐ Bride

| Field | Value |
|---|---|
| 1A FIRST NAME | TANEKA |
| 1B MIDDLE | LAURA |
| 1C CURRENT LAST | ELLIS |
| 1D LAST NAME AT BIRTH (IF DIFFERENT THAN 1C) | |
| 2 DATE OF BIRTH (MM/DD/CCYY) | 07/26/1981 |
| 3 STATE/COUNTRY OF BIRTH | WI |
| 4 #PREV MARRIAGES/SRDP | 00 |
| 5A LAST MARRIAGE/SRDP ENDED BY | — — |
| 5B DATE ENDED (MM/DD/CCYY) | — / — / — — — — |
| ☐ DEATH ☐ DISSO ☐ ANNULMENT ☐ TERM SRDP ☒ N/A | |
| 6 ADDRESS | 2410 W.EL CAMINO AVE. APT 912 |
| 7 CITY | SACRAMENTO |
| 8 STATE/COUNTRY | CA |
| 9 ZIP CODE | 95833 |
| 10A FULL BIRTH NAME OF FATHER/PARENT | WALTER HUNTER |
| 10B STATE OF BIRTH (IF OUTSIDE U S ENTER COUNTRY) | MS |
| 11A FULL BIRTH NAME OF MOTHER/PARENT | SHARI ELLIS |
| 11B STATE OF BIRTH (IF OUTSIDE U S ENTER COUNTRY) | IL |

**SECOND PERSON DATA** — ☐ Groom ☐ Bride

| Field | Value |
|---|---|
| 12A FIRST NAME | EARL |
| 12B MIDDLE | LAMOUNT |
| 12C CURRENT LAST | MCNEIL |
| 12D LAST NAME AT BIRTH (IF DIFFERENT THAN 12C) | - |
| 13 DATE OF BIRTH (MM/DD/CCYY) | 10/12/1977 |
| 14 STATE/COUNTRY OF BIRTH | IL |
| 15 # PREV MARRIAGES/SRDP | 01 |
| 16A LAST MARRIAGE/SRDP ENDED BY | |
| 16B DATE ENDED (MM/DD/CCYY) | 04/16/2005 |
| ☐ DEATH ☒ DISSO ☐ ANNULMENT ☐ TERM SRDP ☐ N/A | |
| 17 ADDRESS | 2410 W.EL CAMINO AVE. APT 912 |
| 18 CITY | SACRAMENTO |
| 19 STATE/COUNTRY | CA |
| 20 ZIP CODE | 95833 |
| 21A FULL BIRTH NAME OF FATHER/PARENT | FRANK LOWE |
| 21B STATE OF BIRTH (IF OUTSIDE U S ENTER COUNTRY) | IL |
| 22A FULL BIRTH NAME OF MOTHER/PARENT | MARY ANN MCNEIL |
| 22B STATE OF BIRTH (IF OUTSIDE U S ENTER COUNTRY) | IL |

**AFFIDAVIT**

WE, THE UNDERSIGNED DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT WE ARE UNMARRIED AND THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT TO THE BEST OF OUR KNOWLEDGE AND BELIEF. WE FURTHER DECLARE THAT NO LEGAL OBJECTION TO THE MARRIAGE NOR TO THE ISSUANCE OF A LICENSE IS KNOWN TO US. WE ACKNOWLEDGE RECEIPT OF THE INFORMATION REQUIRED BY FAMILY CODE SECTION 358 AND HEREBY APPLY FOR A LICENSE AND CERTIFICATE OF MARRIAGE

| 23 SIGNATURE OF PERSON LISTED IN FIELDS 1A-1D | 24 SIGNATURE OF PERSON LISTED IN FIELDS 12A-12D |
|---|---|
| ▶ Taneka Ellis | ▶ |

**LICENSE TO MARRY**

THE UNDERSIGNED, DO HEREBY CERTIFY THAT THE ABOVE-NAMED PARTIES TO BE MARRIED HAVE PERSONALLY APPEARED BEFORE ME OR THE PERSON PERFORMING THE CEREMONY HAS PERSONALLY APPEARED BEFORE ME AND PRESENTED AN AFFIDAVIT SIGNED BY THE PARTIES TO BE MARRIED DECLARING THAT ONE OR BOTH OF THE PARTIES ARE PHYSICALLY UNABLE TO APPEAR AND EXPLAINING THE REASONS THEREFOR IN ACCORDANCE WITH FAMILY CODE SECTION 426 THE PARTIES PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE TO BE THE PERSONS CLAIMED. HAVE DECLARED THAT THEY MEET ALL OF THE REQUIREMENTS OF THE LAW AND HAVE PAID THE FEES PRESCRIBED BY LAW. AUTHORIZATION AND LICENSE IS HEREBY GIVEN TO ANY PERSON DULY AUTHORIZED TO PERFORM A MARRIAGE CEREMONY WITHIN THE STATE OF CALIFORNIA TO SOLEMNIZE THE MARRIAGE OF THE ABOVE-NAMED PERSONS. REQUIRED CONSENTS AND AFFIDAVITS FOR THE ISSUANCE OF THIS LICENSE ARE ON FILE

| 25A ISSUE DATE (MM/DD/CCYY) | 25B EXPIRES DATE (MM/DD/CCYY) | 25C NAME OF COUNTY CLERK | 25D SIGNATURE OF CLERK OR DEPUTY CLERK |
|---|---|---|---|
| 06/01/2010 | 08/29/2010 | CRAIG A. KRAMER | BY ▶ |
| 25E MARRIAGE LICENSE NUMBER | 25F COUNTY OF ISSUE | 25G RETURN COMPLETED MARRIAGE LICENSE TO (INCLUDE ADDRESS) | |
| A-41034002394 | SACRAMENTO | 600 8TH STREET, SACRAMENTO, CA 95814 | |

**WITNESS(ES) (ONE REQUIRED, NO MORE THAN TWO ALLOWED)**

| 26A SIGNATURE OF WITNESS | 26B NAME OF PERSON WITNESSING MARRIAGE (TYPE OR PRINT CLEARLY) |
|---|---|
| | Tom Hong |
| 26C ADDRESS, CITY, STATE/COUNTRY, AND ZIP CODE | |
| 600 8TH ST., SACRAMENTO, CA 95814 | |
| 27A SIGNATURE OF WITNESS | 27B NAME OF PERSON WITNESSING MARRIAGE (TYPE OR PRINT CLEARLY) |
| | |
| 27C ADDRESS, CITY, STATE/COUNTRY, AND ZIP CODE | |

**CERTIFICATION OF PERSON SOLEMNIZING MARRIAGE**

THE UNDERSIGNED DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA, THAT THE ABOVE-NAMED PARTIES WERE JOINED BY ME IN MARRIAGE IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA. NOTE THE MARRIAGE CEREMONY MUST TAKE PLACE IN THE STATE OF CALIFORNIA

| 28A DATE OF MARRIAGE (MM/DD/CCYY) | 28B CITY/TOWN OF MARRIAGE | 28C COUNTY OF MARRIAGE |
|---|---|---|
| 06/01/2010 | SACRAMENTO | SACRAMENTO |
| 29A SIGNATURE OF PERSON SOLEMNIZING MARRIAGE | | 29B RELIGIOUS DENOMINATION (IF CLERGY) |
| Toni C Lewis | | - |
| 29C NAME OF PERSON SOLEMNIZING MARRIAGE (TYPE OR PRINT CLEARLY) | | 29D OFFICIAL TITLE |
| TONI C. LEWIS | | DEP COM CIV MAR |
| 29E ADDRESS, CITY, STATE/COUNTRY, AND ZIP CODE | | |
| 600 8TH ST. SACRAMENTO CA 95814 | | |

**NEW NAMES (IF ANY)**

NEW MIDDLE AND LAST NAME OF PERSON LISTED IN 1A-1D (IF ANY) FOR USE UPON SOLEMNIZATION OF THE MARRIAGE (SEE REVERSE FOR INFORMATION)

| 30A FIRST – MUST BE SAME AS 1A | 30B MIDDLE | 30C LAST |
|---|---|---|
| TANEKA | LAURA | MCNEIL |

NEW MIDDLE AND LAST NAME OF PERSON LISTED IN 12A-12D (IF ANY) FOR USE UPON SOLEMNIZATION OF THE MARRIAGE (SEE REVERSE FOR INFORMATION)

| 31A FIRST – MUST BE SAME AS 12A | 31B MIDDLE | 31C LAST |
|---|---|---|
| | | |

**LOCAL REGISTRAR**

| 32A NAME OF LOCAL REGISTRAR | 32B SIGNATURE OF CLERK OR DEPUTY CLERK | 32C DATE ACCEPTED FOR REGISTRATION |
|---|---|---|
| CRAIG A. KRAMER | BY ▶ | 06/07/2010 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS

VS-117 (01/01/2010)

CASACRAM02

### CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered
and placed on file in the office of the Sacramento County Clerk/Recorder.

**001812340**

DATE ISSUED: **FEB 06 2019**



DONNA ALLRED, COUNTY CLERK/RECORDER

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the County Clerk/Recorder.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# STATE OF CALIFORNIA

## CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

## 1 OF 5

### CERTIFICATE OF DEATH
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11/REV 3/09

3201637010691

| STATE FILE NUMBER | | LOCAL REGISTRATION NUMBER |
|---|---|---|

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| EARL | - | MCNEIL |

| AKA, ALSO KNOWN AS—Include full AKA (FIRST, MIDDLE, LAST) | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|---|
| | 10/12/1977 | 40 | | | M |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP* (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| UNKNOWN | UNKNOWN | YES ☐ NO ☐ UNK ☒ | UNKNOWN | 06/11/2018 | 2016 |

| 13. EDUCATION—Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/a/SPANISH? (If yes, see worksheet on back) | 16. DECEDENT'S RACE—Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| UNKNOWN | ☐ YES ☒ | BLACK |

| 17. USUAL OCCUPATION—Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| UNKNOWN | UNKNOWN | UNK |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number, or location) | | | | |
|---|---|---|---|---|
| UNKNOWN - | | | | |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| UNKNOWN | UNKNOWN | - | - | UNKNOWN |

**INFORMANT'S NAME**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| UNDER INVESTIGATION, M.E. OFFICE | 5570 OVERLAND AVENUE, SAN DIEGO, CA 92123 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SRDP*—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) | |
|---|---|---|---|
| UNKNOWN | UNKNOWN | UNKNOWN | |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | | |
|---|---|---|---|

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| PEND | ► NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| S.D. COUNTY MEDICAL EXAMINER | NONE | ► WILMA J WOOTEN, MD MPH | 06/19/2018 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| UCSD MEDICAL CENTER | ☒ IP   ER/OP ☐   DOA ☐ | Hospice ☐   Nursing Home/LTC ☐   Decedent's Home ☐   Other ☐ |

| 104. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 105. CITY |
|---|---|
| 200 W ARBOR DRIVE | SAN DIEGO |

SAN DIEGO

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | | ☒ YES   ☐ NO |
| IMMEDIATE CAUSE (A) PENDING | | (A) | 18-01430 |
| (Final disease or condition resulting in death) | | | 109. BIOPSY PERFORMED? |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (B) | (B) | ☐ YES   ☒ NO |
| | (C) | (C) | 110. AUTOPSY PERFORMED? |
| | | | ☒ YES   ☐ NO |
| | (D) | (D) | 111. USED IN DETERMINING CAUSE? |
| | | | ☒ YES   ☐ NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| | ☐ YES   ☐ NO   ☐ UNK |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since (A) mm/dd/ccyy   Decedent Last Seen Alive (B) mm/dd/ccyy | ► | | |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH  ☐ Natural  ☐ Accident  ☐ Homicide  ☐ Suicide  ☒ Pending Investigation  ☐ Could not be determined | ☐ YES  ☐ NO  ☐ UNK | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ► STEVEN CAMPMAN | 06/13/2018 | STEVEN CAMPMAN, MD, DME |

**STATE REGISTRAR**

| A | B | C | D | E | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|
| | | | | | | |

*010001003911134*

CASANDIE282

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk

*Ernest J. Dronenburg.*

Nov 19, 2019

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk





004919560

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

## 2 OF 5

**AFFIDAVIT TO AMEND A RECORD**
NO ERASURES, WHITEOUTS, PHOTOCOPIES,
OR ALTERATIONS

3052018127386
**STATE FILE NUMBER**

3201837010691
**LOCAL REGISTRATION NUMBER**

1.1

☐ BIRTH   ☒ DEATH   ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

## PART I   INFORMATION TO LOCATE RECORD

**INFORMATION AS IT APPEARS ON ORIGINAL RECORD**

| 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST |
|---|---|---|
| EARL | - | MCNEIL |

| 2. SEX | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT |
|---|---|---|---|
| M | 06/11/2018 | SAN DIEGO | SAN DIEGO |

| 6. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD | 7. FULL NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD |
|---|---|
| UNKNOWN UNKNOWN UNKNOWN | UNKNOWN UNKNOWN UNKNOWN |

## PART II   STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD

LIST ONE ITEM PER LINE

| 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT APPEARS ON ORIGINAL RECORD | 10. CORRECTED INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| 2 | - | LAMONT |
| 9 | UNKNOWN | ILLINOIS |
| 10 | UNKNOWN | 344662026 |
| 11 | UNK | NO |
| 12 | UNKNOWN | MARRIED |
| 13 | UNKNOWN | HIGH SCHOOL DIPLOMA |
| 16 | BLACK | AFRICAN AMERICAN |
| 16 | | |
| 16 | | |
| 17 | UNKNOWN | LABORER |
| 18 | UNKNOWN | CONSTRUCTION |
| 19 | UNK | 11 |
| 20 | UNKNOWN - | 4150 BONILLO DRIVE UNIT 123 |
| 21 | UNKNOWN | SAN DIEGO |
| 22 | UNKNOWN | SAN DIEGO |
| 23 | - | 92115 |
| 24 | - | 31 |
| 25 | UNKNOWN | CALIFORNIA |
| 26 | UNDER INVESTIGATION, M.E. OFFICE | TAMMY DAVIS, AUNT |
| 27 | 5570 OVERLAND AVENUE, | 4522 60TH STREET UNIT 3, |

**REASON FOR CORRECTION**

11. TO CORRECT THE RECORD

**AFFIDAVITS AND SIGNATURES**

**TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD**

We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct.

| 12A. SIGNATURE OF FIRST PERSON | 12B. PRINTED NAME | 12C. TITLE/RELATIONSHIP TO PERSON IN PART I |
|---|---|---|
| ► TYRONE SALVATIERRA | TYRONE SALVATIERRA | MORTUARY ADMIN |
| 12D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) 8406 UNIVERSITY AVENUE, SAN DIEGO, CA 92115 | | 12E. DATE SIGNED—MM/DD/CCYY 06/21/2018 |
| 13A. SIGNATURE OF SECOND PERSON ► JULIO ESTRADA | 13B. PRINTED NAME JULIO ESTRADA | 13C. TITLE/RELATIONSHIP TO PERSON IN PART I DEPUTY CORONER |
| 13D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) 5570 OVERLAND AVE, SAN DIEGO, CA 92123 | | 13E. DATE SIGNED—MM/DD/CCYY 07/13/2018 |

**STATE/LOCAL REGISTRAR USE ONLY**

| 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 15. DATE ACCEPTED FOR REGISTRATION |
|---|---|
| ► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 07/13/2018 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS

*2018010031893S*

FORM VS 24e (REV. 1/08)
1.1

CASANDIE02

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Nov 19, 2019

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk

004919561



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

## 3 OF 5

| 3052018127386 | **AFFIDAVIT TO AMEND A RECORD** | 3201837010691 |
|---|---|---|
| STATE FILE NUMBER | NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS | LOCAL REGISTRATION NUMBER |

1.2  ☐ BIRTH  ☒ DEATH  ☐ FETAL DEATH

**TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD**

### PART I — INFORMATION TO LOCATE RECORD

| | | |
|---|---|---|
| **INFORMATION AS IT APPEARS ON ORIGINAL RECORD** | 1A. NAME—FIRST **EARL** | 1B. MIDDLE | 1C. LAST **MCNEIL** |

| 2. SEX **M** | 3. DATE OF EVENT—MM/DD/CCYY **06/11/2018** | 4. CITY OF EVENT **SAN DIEGO** | 5. COUNTY OF EVENT **SAN DIEGO** |
|---|---|---|---|

| 6. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD **UNKNOWN UNKNOWN UNKNOWN** | 7. FULL NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD **UNKNOWN UNKNOWN UNKNOWN** |
|---|---|

### PART II — STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD

| | 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT APPEARS ON ORIGINAL RECORD | 10. CORRECTED INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| **LIST ONE ITEM PER LINE** | 28 | SAN DIEGO, CA 92123 | SAN DIEGO, CA 92115 |
| | 29 | UNKNOWN | TANEKA |
| | 30 | UNKNOWN | LAURA |
| | 31 | UNKNOWN | ELLIS |
| | 32 | UNKNOWN | FRANK |
| | 33 | UNKNOWN | LOWE |
| | 34 | UNKNOWN | ILLINOIS |
| | 35 | UNKNOWN | MARY |
| | 36 | UNKNOWN | ANN |
| | 37 | UNKNOWN | MCNEIL |
| | 38 | UNKNOWN | ILLINOIS |
| | 39 | - | 06/26/2018 |
| | 40 | -, | RESIDENCE OF AUNT, TAMMY DAVIS, 4522 60TH STREET UNIT 3, SAN DIEGO, CA 92115 |
| | 41 | PEND | CR/RES |
| | 42 | NOT EMBALMED | STEPHEN HANNUM |
| | 43 | - | EMB7167 |
| | 44 | S.D. COUNTY MEDICAL | PREFERRED CREMATION AND |

| **REASON FOR CORRECTION** | 11. TO CORRECT THE RECORD |
|---|---|

| **AFFIDAVITS AND SIGNATURES** | We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct. | | |
|---|---|---|---|
| **TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD** | 12A. SIGNATURE OF FIRST PERSON ► TYRONE SALVATIERRA | 12B. PRINTED NAME TYRONE SALVATIERRA | 12C. TITLE/RELATIONSHIP TO PERSON IN PART I MORTUARY ADMIN |
| | 12D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) 8406 UNIVERSITY AVENUE, SAN DIEGO, CA 92115 | | 12E. DATE SIGNED—MM/DD/CCYY 06/21/2018 |
| | 13A. SIGNATURE OF SECOND PERSON ► JULIO ESTRADA | 13B. PRINTED NAME JULIO ESTRADA | 13C. TITLE/RELATIONSHIP TO PERSON IN PART I DEPUTY CORONER |
| | 13D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP) 5570 OVERLAND AVE, SAN DIEGO, CA 92123 | | 13E. DATE SIGNED—MM/DD/CCYY 07/13/2018 |

| **STATE/LOCAL REGISTRAR USE ONLY** | 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR ► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 15. DATE ACCEPTED FOR REGISTRATION 07/13/2018 |
|---|---|---|

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS    FORM VS 24e (REV. 1/08)
*20102002918935*    1.2

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Nov 19, 2019

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk

004919562

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



# STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN DIEGO
ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

## 4 OF 5

| 3052018127386 | **AFFIDAVIT TO AMEND A RECORD** | 3201837010691 |
|---|---|---|
| STATE FILE NUMBER | NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS | LOCAL REGISTRATION NUMBER |

**1.3**    ☐ BIRTH    ☒ DEATH    ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

**PART I    INFORMATION TO LOCATE RECORD**

| | 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST |
|---|---|---|---|
| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | EARL | - | MCNEIL |

| | 2. SEX | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT |
|---|---|---|---|---|
| | M | 06/11/2018 | SAN DIEGO | SAN DIEGO |

| 6. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD | 7. FULL NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD |
|---|---|
| UNKNOWN UNKNOWN UNKNOWN | UNKNOWN UNKNOWN UNKNOWN |

**PART II    STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD**

| | 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT APPEARS ON ORIGINAL RECORD | 10. CORRECTED INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| | | EXAMINER | BURIAL |
| LIST ONE ITEM PER LINE | 45 | NONE | FD1746 |

**REASON FOR CORRECTION**    11. TO CORRECT THE RECORD

**AFFIDAVITS AND SIGNATURES**

We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct.

| 12A. SIGNATURE OF FIRST PERSON | 12B. PRINTED NAME | 12C. TITLE/RELATIONSHIP TO PERSON IN PART I |
|---|---|---|
| ► TYRONE SALVATIERRA | TYRONE SALVATIERRA | MORTUARY ADMIN |

| 12D. ADDRESS (STREET AND NUMBER, CITY, STATE, ZIP) | | 12E. DATE SIGNED—MM/DD/CCYY |
|---|---|---|
| 6406 UNIVERSITY AVENUE, SAN DIEGO, CA 92115 | | 06/21/2018 |

| 13A. SIGNATURE OF SECOND PERSON | 13B. PRINTED NAME | 13C. TITLE/RELATIONSHIP TO PERSON IN PART I |
|---|---|---|
| ► JULIO ESTRADA | JULIO ESTRADA | DEPUTY CORONER |

| 13D. ADDRESS (STREET AND NUMBER, CITY, STATE, ZIP) | | 13E. DATE SIGNED—MM/DD/CCYY |
|---|---|---|
| 5570 OVERLAND AVE, SAN DIEGO, CA 92123 | | 07/13/2018 |

TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD

**STATE/LOCAL REGISTRAR USE ONLY**

| 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 15. DATE ACCEPTED FOR REGISTRATION |
|---|---|
| ► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 07/13/2018 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS    *00010300391893S*    FORM VS 24e (REV. 1/08)

1.3

CASANDIEO2

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Nov 19, 2019

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk

004919563



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# COUNTY OF SAN DIEGO

ERNEST J. DRONENBURG, JR.
ASSESSOR/RECORDER/COUNTY CLERK

## 5 OF 5

**PHYSICIAN/CORONER'S AMENDMENT**

NO ERASURES, WHITEOUTS, PHOTOCOPIES,
OR ALTERATIONS

3052018127386
**STATE FILE NUMBER**

3201837010691
**LOCAL REGISTRATION NUMBER**

2.1

☐ BIRTH ☒ DEATH ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

**PART I    INFORMATION TO LOCATE RECORD**

| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST | 2. SEX |
|---|---|---|---|---|
| | EARL | LAMONT | MCNEIL | M |
| | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT | |
| | 06/11/2018 | SAN DIEGO | SAN DIEGO | |

**PART II    STATEMENT OF CORRECTIONS**

| | 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 107A | PENDING | HYPOXEMIC-ISCHEMIC ENCEPHALOPATHY |
| | 107AT | - | WKS |
| | 107B | | RESUSCITATED CARDIOPULMONARY ARREST |
| | 107BT | | WKS |
| | 107C | | METHAMPHETAMINE TOXICITY, AGITATION, AND RESPIRATORY COMPROMISE |
| | 107CT | | WKS |
| | 112 | - | NONE |
| | 113 | - | NONE |
| | 119 | PENDING INVESTIGATION | HOMICIDE |
| | 120 | | NO |
| | 121 | | 05/28/2018 |
| | 122 | | 0740 |
| | 123 | | JAIL |
| | 124 | | RESTRAINED BY ON DUTY LAW ENFORCEMENT WHILE INTOXICATED WITH METHAMPHETAMINE |
| | 125 | | 1173 FRONT STREET, SAN DIEGO, CA 92101 |

**DECLARATION OF CERTIFYING PHYSICIAN OR CORONER**

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER | 10. DATE SIGNED—MM/DD/CCYY | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER | | |
|---|---|---|---|---|
| ► STEVEN CAMPMAN | 09/21/2018 | MD, DME | | |
| 12. ADDRESS—STREET and NUMBER | 13. CITY | | 14. STATE | 15. ZIP CODE |
| 5570 OVERLAND AVE, STE 101 | SAN DIEGO | | CA | 92123 |

| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY |
|---|---|---|
| | ► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 09/24/2018 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS    *020201003994612*    FORM VS 24Ae (REV. 1/08)

2.1

CASANDIED2

This is a true and exact reproduction of the document officially registered and placed on file in the office of the San Diego County Recorder/Clerk



Nov 19, 2019

Ernest J. Dronenburg, Jr.
Assessor/Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying date, seal and signature of the Recorder/County Clerk

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

004919564



# Exhibit

# 2



**BY SAFE RESTRAINTS, INC.**

# Basic Application Manual



## The Ultimate Safe Restraint System
**The WRAP reduces risk of injury and possible in-custody death.**

  

**www.saferestraints.com**

Safe Restraints, Inc. • 712 Bancroft Road, Suite 782  Walnut Creek, CA 94598 • 1-800-WRAP-911

# Table of Contents

**Introduction**................................................................3

**Training** ...................................................................4

**Product Overview** ......................................................5
- The WRAP - Standard
- The WRAP with Soft-Cuffs
- The WRAP - Small
- The WRAP with Soft-Cuffs - Small

**System Application** ...................................................6
- Three-person

**Transport**................................................................9

**Application Variations**............................................. 10
- Two-person
- Four-person
- Small size models

**Soft-Cuff System Application** ................................. 11

**Removing The WRAP** ............................................. 12

**Preparing The WRAP** ............................................ 12

**Cleaning** ............................................................... 12

**Precautions**........................................................... 13





# Introduction

The WRAP application manual and The WRAP website, www.saferestraints.com, are guides for the safe and proper use of The WRAP. They are not intended to replace practical training. The application manual provides training steps for the application of The WRAP. The application manual is available for download at www.saferestraints.com. The Safe Restraints, Inc. website provides additional training materials, including photo illustrations and videos, that provide examples of The WRAP in use.

**Disclaimer**
The WRAP Safe Restraint System should only be used by persons trained in its safe and proper application. Safe Restraints assumes no responsibility for the improper application of The WRAP.

**Warranty**
Safe Restraints, Inc. warrants that The WRAP will be free from defects in materials and workmanship for a period of 1 year from the date of purchase. If during the warranty period, The WRAP is found to be defective because of defects in materials or workmanship, it will be repaired or replaced without charge.

**Questions? Need Assistance in training or application?**
Please call us at (800) WRAP-911 (972-7911).



# Training

Safe Restraints, Inc. strongly recommends that personnel using The WRAP be trained in its use. Refer to www.saferestraints.com for proper application and instruction guidelines.

Information and resources available include:
• Photo illustrations
• The WRAP training manual
• Training videos
• Sample lesson plans
• Sample policy

These and other included materials are designed to assist agencies in researching and managing The WRAP restraint.

## Training Options

To assist customers with any training needs, Safe Restraints, Inc. offers several options. It is imperative that trained instructors follow the training guidelines on the website and in this manual.

### Self/In-house Agency Training

Training from personnel from within the agency. Safe Restraints, Inc. recommends that instructors are qualified instructors in restraints and self-defense.

### Internet Self-Training Course

Internet program by Safe Restraints, Inc. Requires submission of lesson plan and application video. Course certificate provided upon completion. *Course length 2-4 hours.*

### Face-to-face Instructors Course

Safe Restraints, Inc. provides a qualified instructor to teach an Instructors Course at your location for your agency. Course certificate provided upon completion. *Course length 2-4 hours.*

### Remote Live Webcam Training

Safe Restraints, Inc. connects with your agency via live Internet webcam and conducts training remotely. Course certificate provided upon completion. *Course length 2-4 hours.*

*The WRAP meets or exceeds known POST and Lexipol training and policy standards guidelines.*

For more details, please contact us at www.saferestraints.com or call us at (800) 972-7911.



# The WRAP Product Overview

**Each model contains a complete system.**
**Custom modifications available, contact us for details.**



### The WRAP – Standard

- Designed to fit all.
- *Complete system includes:*
- Ankle strap.
- Leg restraint with stainless steel locking buckles.
- Safety harness with pocket for storing spit masks and safety gloves, locking carabiner for securing handcuffs, and stainless steel locking buckles.
- Tactical bag with hands-free shoulder strap.



### The WRAP with Soft-Cuffs

- Designed to fit all.
- *Complete system includes:*
- The same parts as standard wrap, but with the addition of soft-cuffs located on leg restraint.
- *Primarily used for custodial and/or medical care.*



### The WRAP – Small

- Identical to the standard wrap system, but downsized for very small children.
- Commonly used by juvenile facilities.
- Each part labeled "SMALL" in red for identification. Labels prevent mix-matching at facilities that need both sizes.



### The WRAP with Soft-Cuffs – Small

- Identical to The WRAP with Soft-Cuffs, but downsized for very small children.
- Addition of soft-cuffs on leg restraint.
- *Primarily used by juvenile facilities for custodial and/or medical care.*
- Each part labeled "SMALL" in red.
- Labels prevent mix-matching at facilities that need both sizes.



# Standard Application

The WRAP is typically applied by two to four people. It may need to be applied by more than four personnel, depending on the level of resistance encountered. The following illustrations show a three-person application. *See Application Variations on page 9, for two and four-personnel application instructions.*

**RECOMMENDATION**

Safe Restraints, Inc. strongly recommends that the subject be prone, faced down, with the hands cuffed behind the subject's back before applying The WRAP.

It is essential to minimize the time the subject is restrained face down to reduce the possible risks associated with respiratory fatigue.



 ## STEP 1 – Apply Ankle Strap



Cross the subject's ankles.

Apply the ankle strap firmly around the crossed ankles. *The ankle strap helps control and limit movement of the legs.*



 ## STEP 2 – Position Leg Wrap





Maintain control of the subject's upper and lower body.

Slide the leg restraint under the subject's legs.

Position the knees on the markings labeled "KNEES HERE".

---

*Tactical Tips:*

- To slide The WRAP under the subject's legs more easily, use the carry handle in the ankle strap to help lift the legs.
- If possible, deploy The WRAP from the subject's right side. This positions the three bands for easy access.

 ## STEP 3 – Secure Leg Bands



While maintaining control of the subject, secure and tighten the bands.

Start with the band closest to the feet, moving upwards towards the subject's waist until all three bands are secure.
*Securing the band closest to the feet first helps prevent the person from kicking.*



**The WRAP by Safe Restraints, Inc.**
**1-800-WRAP-911 (972-7911)**
**www.saferestraints.com**

 # STEP 4 – Apply Harness



Maintain control of the subject and place the harness on the subject's back.

The word "BACK" should face upwards.

Insert handcuffs into the carabiner at the bottom of the harness. *Carabiner designed for linked or hinged handcuffs.*

Lock carabiner by twisting lock until snug.

Drape the shoulder straps over the person's head so their head is between the two yellow straps.

*Tactical Tips:*

• Use storage pocket on back of harness to store spit masks/guards or gloves for quick access.

• The spit mask can be applied before, during or after The WRAP has been applied.

 # STEP 5 – Secure the Harness



Supporting the head of the subject, use an approved method to roll the subject up to a seated position.

Feed the straps through the arms and attach to the locking buckles. This can be done with the subject lying on his or her side or in a seated position (seated position is easier).

Secure the straps firmly.

The security buckles are designed to be released with a cuff key or small object like the tip of a ballpoint pen by inserting it into the 1/4 inch hole on the metal cover and pressing inward.

*Note – Step 5 Pregnancy Exception:*
Persons who are known to be pregnant should be restrained in the least restrictive manner that is effective for officer safety. Many states/countries have specific laws or guidelines regarding the restraint of pregnant individuals. It is imperative that these guidelines be followed.

 # STEP 6 – Attach Harness Tether





Maintain control of the subject

Attach the tether lead of the harness to the carabiner on the body of The WRAP (*located below the bottom band by the ankles*).

Lock the carabiner by twisting until snug.

Pull the tether strap BACK TOWARDS THE PERSON'S BODY until the subject is fully upright. (*Do not over-tighten*). This results in the harness pulling 4-6" away from the chest for full chest expansion.

The subject is now fully restrained in The WRAP and ready to be moved or transported.

*Optional:* Once the person is seated upright and the harness secured, the person may be placed on their side for added safety/security or need for medical treatment, *unless otherwise directed by agency policy*.

# Transport

Whether in the field or a controlled environment, the subject will normally need to be lifted off the ground and placed into a patrol car, on a gurney, backboard or wheel chair.

## Lifting the restrained subject




Two people should lift the subject under the arms while the third person lifts the legs.

The handle on the ankle strap can be used or simply a log-carry position.

Care should be taken to avoid dropping or injuring the subject.



# Application Variations

The WRAP is typically applied by two to four people. One person normally controls the upper body while the other personnel control the legs and apply the hobble and leg restraint. Occasionally the application of The WRAP may require additional personnel, depending on the amount of resistance encountered. In that situation, adjust personnel as needed. These tactics are suggestions only and may vary due to the resistance encountered or agency policy.

| **Two-person application** | **Four-person application** |
|---|---|
| *Two-person application differs from three-person only in regard to control duties.* | • One person controls the upper body. |
| • After the subject is handcuffed, one person maintains control over the lower body while one or both apply the ankle strap and leg restraint. | • Second person controls the feet. |
| | • Third and fourth personnel are at each side of the subject's legs, and apply the ankle strap and leg restraint. |
| • Once the legs are secure, personnel can proceed with applying the harness. | • Once the legs are secure, proceed with applying the harness. |

*Tactical Tip:*
Coordinating the application of The WRAP among personnel at the scene is critical. The person controlling the upper body is usually in the best position to coordinate the application.

## Small size models

The small sizes of The WRAP and The WRAP with Soft-Cuffs are downsized to fit very small children. These models are primarily used by juvenile facilities. The application and safety guidelines for application are the same as the standard size models of The WRAP unless specified by the agency.

*Tactical Tip:*
Each small part, including the bag, is labeled in red to indicate size. Look for the "SMALL" label on all pieces to avoid mix matching at facilities that use both sizes.



# Soft-Cuff System Application

The WRAP with Soft-Cuffs is designed for agencies **where handcuffs are not used** or medical needs exist for the subject restrained. The WRAP with Soft-Cuffs can also be used in conjunction with standard handcuffs.

The soft-cuffs are temporary restraints and do NOT provide the same level of security that handcuffs provide. Soft-cuffs should only be used when staff can maintain constant observation and physical control of the individual in The WRAP.

The soft-cuffs should be utilized after handcuffs. If only soft-cuffs are needed, personnel should control both arms and secure the wrists into the soft-cuffs. A person who is combative and/or is making efforts to defeat the soft-cuffs should be placed back in handcuffs when possible.

## Application



Release one handcuff and transfer the wrist to the soft-cuff, while keeping the second wrist handcuffed to the carabiner.

Transfer the second wrist to the remaining soft-cuff.

Ensure soft cuffs are applied firmly and monitor hands for any blood circulation issues.

*Tactical Tip:*
To transfer from soft-cuffs to handcuffs, repeat steps, transferring one hand at a time and attach the handcuffs to the carabiner.

## Elbow Strap

The elbow strap is an additional security option, **not a requirement**. The elbow strap pulls the elbows and shoulders back and helps prevent the subject's hands from possibly reaching the other and releasing the soft-cuff. Personnel should evaluate their security needs while adhering to their agency's training policy.



Wrap the elbow strap around the upper arms above the elbow (like a belt) and secure firmly.

*Tactical Tip:*
Do not over tighten to avoid straining the shoulders or causing any circulation issues.



## Soft-cuff guidelines:
- Soft-cuffs should be used for brief periods of time and under direct supervision.
- Primary use is in custodial settings.
- Soft-cuffs do not provide the same level of security that handcuffs provide.
- Soft-cuffs do not have locks. Personnel need to provide immediate supervision.

## Examples of soft-cuff use:
- Medical care such as for blood draw or IV need
- Need to aid with joint movement for circulation concerns when The WRAP is used for an extended period
- When allowing a person in The WRAP to walk (while supported by personnel)
- Department requirement/restriction of handcuff use

*Note:*
Typically, the soft-cuffs with the aid of the elbow strap are sufficient for normal restraint.
Safe Restraints, Inc. takes custom orders for locking soft-cuffs for added security.
Contact us for a custom order or questions.

# Removing The WRAP
Reverse the application procedure. It may be necessary to ease the tension of the tether strap (the strap that connects the harness to the leg wrap) to disconnect from the carabiner on The WRAP. To implement, lean the subject forward and either loosen the tether's ring or simply disconnect the ring from the carabiner. Unlock the security buckles by inserting a cuff key or small object like the top of a ballpoint pen into the 1/4 inch hole on the metal cover and press down.

# Preparing The WRAP
The WRAP should be stored properly in the tactical bag so it is ready for the next deployment.

# Cleaning
When needed, clean with soap and water. A small amount of bleach may be added. Air dry. The WRAP can also be sanitized through a local crime scene cleaning service. If professional cleaning does not prove satisfactory, replacement should be considered.



# Precautions

## Precaution 1 - Aspiration:

**Aspiration is possible when in the supine position.**

Applied properly, The WRAP harness does not hinder the subject's ability to breathe. To minimize respiratory issues, personnel need to work quickly so that the subject is secured in one of the recovery positions.

*Tactical Tip:*

Quick application of the ankle and leg restraint reduces further risks and allows staff to de-escalate. Personnel can then assess the person and staff for any immediate medical needs.

## Precaution 2 – Medical Attention:

**If a restrained subject complains of or exhibits any medical concerns, seek immediate medical attention. Medical treatment can be provided while the subject is restrained in The WRAP.**

Examples of health concerns are:
- Respiratory Distress (i.e. coughing, gasping, gagging, shortness of breath)
- Sudden quiet or inactivity (especially after a violent struggle)
- Chest pains, shooting pains down the arm
- Change in facial color
- Elevated body temperature (I'm burning up!)
- Vomiting
- Suspected drug behavior
- Sweating profusely

## Precaution 3 – Harness:

**The shoulder harness should not be tightened to the point that it may interfere with the subject's ability to breathe.**

## General Precautions:

Subject should be monitored at all times.

The WRAP is a temporary restraint system designed to provide emergency stabilization. Like all restraints, you must assume it is not escape-proof.

Caution should be taken to avoid any straps getting tangled around the subject's neck.

Emergency medical care or evaluation of the subject should be considered in order to reduce injuries and the possibility of in-custody death.

While removing The WRAP, make sure to secure it in an area not accessible to the subject or to others in the immediate area.

After use, follow agency protocol should bodily fluids be present on The WRAP.



**THE ORIGINAL.**
Made in the USA since 1996.



*NO DEATHS OR INJURIES IN 18 YEARS OF USE*

> **The WRAP Restraint was shown to be safe and effective** in a scientific study done by the Institute for the Prevention of In-Custody Deaths (IPICD). **The findings found no deaths or further injuries after The WRAP was used.**



John G. Peters, Jr., Ph.D., CLS | President & Chief Learning Officer
Institute for the Prevention of In-Custody Deaths, Inc.

# YOU CAN'T BEAT The WRAP

